THE BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DIS-
TRICT NO. 201-U, Plaintiff and Counterdefendant-Appellant, v. CRETE-
MONEE EDUCATION ASSOCIATION *et al.*, Defendants and Counterplain-
tiffs-Appellees.

Third District   No. 3—85—0783

Opinion filed September 23, 1986.

Anthony G. Scariano and Linda L. Eyestone, both of Scariano, Kula,
Ellch & Himes, Chartered, of Chicago Heights, for appellant.

Irving M. Friedman and Ann C. Hodges, both of Katz, Friedman, Schur
& Eagle, of Chicago, for appellee.

JUSTICE STOUDER delivered the opinion of the court:
This is a suit between the board of education of Community Unit
School District No. 201-U, Will County (the board), as plaintiff/
counterdefendant and the Crete-Monee Educational Association (the
Association) as defendant/counterplaintiff for a declaratory judgment
and stay of arbitration. The defendants filed a counterclaim seeking
an order compelling plaintiff to arbitrate.
The parties filed cross-motions for summary judgment. Plaintiff
appeals those portions of the judgment which: (1) granted defendant's
motion for summary judgment; (2) dismissed the complaint; and (3) or-
dered plaintiff to arbitrate the grievance filed by defendant.

On March 19, 1984, the board voted in open session at a regularly scheduled board meeting to conduct a public hearing on March 28, 1984, pursuant to the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12), for the purpose of obtaining "input on the question of the economic need to reduce the District's teaching staff by a number in excess of five tenured teachers." The board also voted that, after the public hearing on March 28, it would hold a special board meeting "for the purpose of considering recommendations for the dismissal of certificated staff."

At the special meeting on March 28, 1984, the board conducted a public hearing regarding its economic need to reduce staff. At the hearing the District's superintendent, Mr. Bruce Setchell, outlined the economic condition of the District. Setchell stated that in November 1983 the board approved a motion to operate on a balanced budget for the 1984-85 school year. An analysis of the District's financial situation showed: (1) a projected deficit of $1,300,000 for the 1983-84 fiscal year; (2) an estimated accumulated deficit in 1984-85 of $3 million; (3) no expectations of increased State aid; (4) the District's bond rating does not permit a ready access to the market; and (5) a referendum for increased District revenues was rejected by the voters, 2 to 1, on March 20, 1984. It was decided that budget reductions were the only means available to the District to operate on a balanced budget for 1984-85.

Following the superintendent's remarks, the public was invited to address the board on the issue of the board's economic need to reduce staff. Among the members of the public who addressed the board was the Association's president, Hershel Head, who requested that "the Board forgo taking action on teacher dismissals at this time."

Pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12), at its March 28 meeting the board adopted three separate resolutions, respectively providing for: (1) the dismissal of 29 named probationary teachers; (2) the honorable dismissal of 20 named tenured teachers (defendants here); and (3) the honorable dismissal of 4 named tenured teachers (defendants here) and the tendering to them of part-time teaching positions for the next school term. All resolutions regarding the defendants stated the board had "decided to decrease the number of teachers employed during the next school term." Additionally, the board's resolutions directed the president and secretary of the board to send written notice of the board's decision to each named teacher by registered mail. The notices provided that any teacher desiring a hearing before the board on the matter of his dismissal could request one in writing within 15 days of

the mailing of the notice.

The procedures for honorable dismissal of teachers in contractual continued service (tenure) are set forth in the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12). Section 24—12 provides in relevant part:

"Sec. 24—12. Removal or dismissal of teachers in contractual continued service. If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by certified mail return receipt requested at least 60 days before the end of the school term together with a statement of honorable dismissal and the reason therefor, and in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service. *** Whenever the number of honorable dismissal notices based upon economic necessity exceeds 5, or 150% of the average number of teachers honorably dismissed in the preceding 3 years, whichever is more, then the board shall hold a public hearing on the question of the dismissals. Following the hearing and board review the action to approve any such reduction shall require a majority vote of the board members."

The collective-bargaining agreement entered into between the parties for the school year 1984-85 contains a grievance procedure for the submission of grievances alleging that there has been a violation, misinterpretation, or misapplication of any provision of the agreement. On April 23, 1984, the Association and 24 defendant teachers filed a grievance alleging that article XXI of the collective-bargaining agreement between the board and the Association was violated. The grievants sought the reinstatement of all defendants to full-time teaching positions for the 1984-85 school year.

Grievance meetings were conducted in May 1984. At the meetings the Association summarized its reasons for believing the contract was violated as follows:

(1) there was no decrease in enrollment in specific programs,

(2) there was no discontinuance of a specific service or program, and

(3) there has been no substantial decrease in the educational

fund revenue from the previous fiscal year.

The Association further contended the contract was violated in the case of specific individuals because the provisions relating to the order of dismissal had not been properly applied.

On June 11, 1984, the Association filed a demand for arbitration of the grievance with the American Arbitration Association. The board filed its complaint seeking stay of the arbitration and a declaratory judgment. In the first part of the complaint, it is alleged that article XXI of the collective-bargaining agreement, which provides for binding arbitration, does not and may not provide for arbitration of the subject matter of the grievance. To the complaint, as an exhibit, the board attached a printed copy of the two-year contract. In the second part of the complaint, it is alleged that the subject matter of the grievance and the remedy sought are matters of discretion vested solely in the board of education and cannot legally be submitted to final and binding arbitration or be limited by the negotiation agreement, and that any provision of the negotiation agreement relied upon by defendants to restrict plaintiff's authority to decrease the number of teachers it employs is void, unenforceable and not subject to arbitration. Therefore, the board prayed that the trial court permanently enjoin the arbitration.

The Association appeared and filed an answer and counterclaim that admitted execution of the two-year contract, but denied affirmatively that the decision of the board to decrease the number of teachers it employs to be exclusively within the jurisdiction of the board. Thereafter the parties submitted memorandums in support of their respective motions for summary judgment. The board's memorandum contended its decision to decrease the number of teachers it employs cannot be legally delegated to an arbitrator and that the provisions of the agreement which requires compulsory arbitration does not and may not provide for arbitration of the subject matter of defendant's grievance. In its memorandum the Association contended recent case authority established their grievance as arbitrable under the collective-bargaining agreement. The trial court, after considering the pleadings, the memorandums and arguments of counsel, entered an order in which it found the grievance to be arbitrable.

The board appeals from the judgment entered and initially argues that its power to reduce the number of teachers it employs pursuant to the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12), is a discretionary power conferred exclusively upon the board of education. The board cites in this regard a number of decisions which have expressly held that the discretionary powers conferred upon school

boards by section 24—12 of the School Code may not be delegated. The Association, in contrast, contends that recent case authority has established the arbitrability of grievances over reduction-in-force issues similar to those raised here and cites *Board of Education v. Bremen District No. 228 Joint Faculty Association* (1984), 101 Ill. 2d 115, 461 N.E.2d 406, as significant. The decision pertaining to the *Bremen* grievance involved the issue of whether section 24—12 of the School Code was violated by the board of education when it reduced the number of tenured teachers employed without conducting a prior public hearing on the reduction. In *Bremen*, the board contended the reduction in force resulted from its intention to maintain the traditional 23.5-to-1 teacher-student ratio in the district and that the reduction was not based on economic necessity. Therefore, the board argued, it did not have to comply with the public-hearing requirement of section 24—12 because its decision was not based on economic necessity. The court held that an arbitrator could decide whether the board acted on the basis of economic necessity or other reasons in making its reductions in force, where the grievance alleged a violation of section 24—12's public-hearing requirement for termination based upon economic necessity even though the underlying power to determine whether to act on the basis of economic necessity was nondelegable. We believe the grievance at issue here presents similarly arbitrable issues.

The principal argument of the Association is that the collective-bargaining agreement between it and the board requires arbitration of all unresolved grievances. Specifically, the Association alleges a violation by the board of article XXI of the agreement. Article XXI governs staff reductions and prescribes procedures to be followed in the event of reductions in force, including factors to be considered and specifications regarding the order of layoff of teachers. We believe the applicable provisions of article XXI do include arbitrable issues when considered in light of section 24—12 of the School Code. The grievance in question includes the issues of whether the reduction in force was in fact a result of economic conditions and whether the administrative consequences of the board's determination were properly applied. It appears from the affidavits in support of the motions for summary judgment that section 21.1.4 of the agreement, outlining the manner as to which persons shall be laid off, was also an issue of the grievance. Section 24—12 of the School Code specifically authorizes delegations of decisions regarding the sequence of dismissal. Section 24—12 provides in relevant part:

"As between teachers who have entered upon contractual con-

tinued service, the teacher or teachers with the shorter length of continuing service with the district shall be dismissed first unless an alternative method of determining the sequence of dismissal is established in a collective bargaining agreement or contract between the board and a professional faculty members' organization ***." (Ill. Rev. Stat. 1985, ch. 122, par. 24—12.) Given this express authority and considering the language of the agreement, the board's claim of nonarbitrability of this grievance issue cannot be sustained.

The board also argues it was improper or would be improper to award attorney fees to the Association in connection with the arbitration. Since the Association takes the position that attorney fees were neither awarded nor denied no issue is presented for appeal, and we agree.

For these reasons the judgment of the circuit court of Will County is affirmed.

Affirmed.

SCOTT, P.J., and HEIPLE, J., concur.